**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3200
_____

MICHAEL GRANT,

                                                    Appellant

v.

CITY OF PHILADELPHIA;
EMILE SAURIS; STEVEN MOFFITT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-00735)
District Judge: Honorable Michael M. Baylson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 17, 2024
_____

Before: SHWARTZ, MATEY, and PHIPPS, *Circuit Judges*.

(Filed: March 28, 2024)
_____

OPINION[*]
_____

_____

[*]This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**MATEY**, *Circuit Judge*.

Plaintiff Michael Grant brought claims against two police officers and the City of Philadelphia under 42 U.S.C. § 1983. The District Court granted the defendants' motion for summary judgment and, seeing no error, we will affirm.

## I.

Michael Grant positioned himself and a collection basket near vendors at the "Christmas Village" in Philadelphia's Love Park displaying a sign reading, "If you die tonight, are you going to heaven or hell? Come up and ask me." Dist. Ct. Op. 3. The City of Philadelphia and the park both prohibit solicitation,[1] and Officers Emile Sauris and Steven Moffitt approached Grant and asked him to leave. *Grant v. City of Phila.*, 637 F. Supp. 3d 247, 256 (E.D. Pa. 2022). When Grant repeatedly refused, the officers handcuffed Grant[2] and moved him to the outside edge of the park. After confirming that Grant had no outstanding arrest warrants, the officers issued him a citation and told him to leave. Grant tossed the citation aside and returned to the park. The officers took no further action, and Grant, in his deposition, stated that he reappeared in the park on several additional occasions, all without incident.

---

[1] *See* Phila., Pa. Code § 10-611(4)(b) (prohibiting people from "[s]olicit[ing] money for any purpose on the public sidewalk in any manner . . . within an eight foot (8') radius of any vending cart").

[2] Officer Moffitt testified in his deposition that Grant threw himself onto the ground and resisted when the officers first tried to handcuff him.

Grant brought this action asserting claims against the officers under § 1983.[3] Following discovery, the District Court granted the defendants' motion for summary judgment based on qualified immunity. Grant now appeals.[4]

## II.

Grant argues that the police officers were not entitled to qualified immunity because they arrested him without probable cause. Grant also argues that Love Park's posted ban on solicitation is unconstitutional as applied to him. But Grant's arguments against qualified immunity are unavailing, and he has abandoned his challenge to the solicitation restriction in Love Park on appeal.[5]

### A.

The qualified immunity inquiry asks whether the facts alleged by the plaintiff show that a clearly established constitutional right was violated. *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021). The right must be framed "at the appropriate level of specificity," *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (internal

---

[3] These claims included false arrest, violations of the First Amendment, and municipal liability.

[4] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment. *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe all facts and reasonable inferences in the light most favorable to Grant. *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 156 (3d Cir. 2013).

[5] Since we conclude the officers did not commit any constitutional violations, Grant's municipal liability claim cannot succeed. *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 & n.15 (3d Cir. 2013).

quotation marks and citation omitted), and "sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks and citation omitted).

The officers are entitled to qualified immunity because Grant was stopped as part of an investigation but not arrested. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012) (granting qualified immunity on a false arrest claim when the plaintiff did not establish that she had been arrested). The officers temporarily restrained Grant while reviewing his warrants and questioning his conduct, but they did not transport him to another location or detain him after issuing the citation. That limited restraint during an investigatory stop followed from the officers' reasonable suspicion that Grant was soliciting money in violation of the city ordinance and the park's prohibition. Because a reasonable officer could conclude that Grant was violating the solicitation law, the officers' stop was supported by reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (noting that a police officer can conduct an investigatory stop when he has reasonable suspicion that criminal activity is afoot); *United States v. McCants*, 952 F.3d 416, 422 (3d Cir. 2020) (explaining that, in determining whether a stop was supported by reasonable suspicion, courts "consider[] 'whether a reasonable, trained officer standing in [the officer's] shoes could articulate specific reasons justifying [the] detention'" (quoting *United States v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006)) (second and third alterations in original)). In addition, the officers are entitled to qualified immunity because it was not clearly established at the time of Grant's seizure that a reasonable officer would understand that a First Amendment violation occurs when they arrest an individual

4

speaking in public with retaliatory animus when the officer had reason to believe the speaker committed a crime. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1728 (2019) (holding that there is typically no First Amendment right to be free from a retaliatory arrest if there was probable cause to believe the arrestee committed a crime).

## B.

Before the District Court, Grant sought a declaration that Love Park's solicitation prohibition is unconstitutional as applied to his conduct. Grant, however, waives any such challenge. Grant does not challenge the solicitation ban in his statement of the issues section of his opening brief. *See* Appellant's Br. 2, 5–6 (limiting the statement of the issues and his argument sections to his claim of false arrest under the Fourth Amendment and his First Amendment retaliation and silencing speech claim); *see Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1011 (3d Cir. 1991) ("Nowhere in the 'Statement of the Issues Presented' or the 'Argument' section of plaintiff's appellate brief are those conclusions questioned. We conclude, therefore, that under [Fed. R. App. P. 28(a)(2)–(4)], plaintiff abandoned its . . . claim."). And insofar as Grant challenged the solicitation ban *at all* in his opening brief, he only asserted in passing that the park's solicitation ban was unconstitutional as applied. *See* Appellant's Br. 8–9 (asserting in the summary of the argument that "[t]he posted ban on solicitation is unconstitutional as applied"); *id.* at 33 ("There was a posted ban on solicitation within the park. Every court that has decided the issue has found a ban on solicitation in a public park to be unconstitutional."). Grant did not challenge the solicitation ban "at any level beyond mere generalities," which this Court has held is insufficient to preserve an issue

on appeal. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 148 (3d Cir. 2017).

\* \* \*

For these reasons, we will affirm the District Court.